IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

LEROY S. DOTSON, JR. #332824         *
        Plaintiff,
   v.                                  *   CIVIL ACTION NO. RWT-06-2314

RAKESH MALIK, M.D.                   *
        Defendant.
                             ***

**MEMORANDUM OPINION**

I.    PROCEDURAL HISTORY

Plaintiff was recently transferred to the Metropolitan Transitional Center ("MTC") in Baltimore. At the time he filed this 42 U.S.C. § 1983 civil rights complaint for injunctive relief on September 5, 2006, he was housed at the Maryland Correctional Institution in Hagerstown, Maryland ("MCI-H"). Plaintiff seeks medical care outside the prison, complaining that:

> I keep getting numbness and extraordinary pain in both the lower back area down both legs and burning numbness both in groin area all day long. It is now starting to cramp up very bad in both legs and both feet. I keep asking for professional help in which a neurologist can tell me exactly what is wrong with me. I am not getting no professional treatment at all here.[1]

(Compl. at 3).

Currently pending before the Court is Defendant's Motion to Dismiss or, in the Alternative, Motion for Summary Judgment. (Paper No. 12). It remains unopposed as of the within signature date.[2] The matter may be determined without oral hearing. See Local Rule 105.6. (D. Md. 2004).

---

[1] Dr. Malik's name is not mentioned in the Complaint.

[2] On January 8 and January 12, 2007, Plaintiff filed letters with the Court seeking additional time to file materials. (Paper Nos. 14, & 16-17). On January 12, 2007, he filed correspondence concerning his alleged current medical problems. On January 17, 2007, the Court issued an order, dated January 12, 2007, which granted Plaintiff an additional 21 days to file his opposition. (Paper No. 15).

For reasons to follow, Defendant's response, treated as a summary judgment motion, shall be granted.

II.  STANDARD OF REVIEW

It is well established that a motion for summary judgment will be granted only if there exists no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(c); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  The moving party bears the burden of showing that there is no genuine issue as to any material fact.  No genuine issue of material fact exists, however, if the nonmoving party fails to make a sufficient showing on an essential element of his or her case as to which he or she would have the burden of proof.  See Celotex, 477 U.S. at 322-323.  Therefore, on those issues on which the nonmoving party has the burden of proof, it is his or her responsibility to confront the summary judgment motion with an affidavit or other similar evidence showing that there is a genuine issue for trial.

III.   DISCUSSION

    1. Facts

The following information is adduced from the exhibit evidence presented to the Court.  Prior to his current incarceration, Plaintiff sustained a fracture and crushing injury of his right heel in a work-related accident in September of 2001.  Plaintiff was treated by an orthopedic specialist, Dr. Michael A. Winslow, for eight months and then developed tarsal tunnel syndrome, or a compression of the nerves in his ankle.  This is caused by trauma and characterized by pain, numbness, and tingling.  On May 3, 2002, Dr. Winslow performed a tarsal tunnel release which involves freeing the nerve from any scar tissue or adhesions that might be compressing it.  Dr. Winslow continued to provide Plaintiff post-surgical follow-up care.  While Plaintiff continued to

complain of pain and numbness of his right leg, Dr. Winslow could find "no orthopedically correctable issues." Dr. Winslow noted that Plaintiff had been treated by a "Dr. Horn" who indicated that Plaintiff had begun obtaining increasing doses of his medication "under suspicious circumstances."  Dr. Winslow also noted that Plaintiff had received injection therapy and pain management from "Dr. Campbell" at the Johns Hopkins Hospital, with no benefit.  Dr. Winslow's impression was that Plaintiff was having a hysterical reaction as a result of the injury to the right lower extremity, and he recommended that Plaintiff see a pain management specialist.[3]

Plaintiff entered the Division of Correction ("DOC") on January 13, 2006.  His intake and screening form noted that he had nerve damage to his right foot and ankle.  On January 15 and 16, 2006, he filed his first two sick-call requests complaining that both his feet and lower back were giving him extreme pain because of a "recent" job-related accident and he had a history of migraines.  On January 19, 2006, he was given Motrin and Naprosyn, both non-steroidal anti-inflammatory drugs ("NSAIDS").

Plaintiff was transferred to MCI-H on January 25, 2006.  According to Defendant, between January 25 and December 2, 2006, Plaintiff submitted approximately 63 sick-call requests complaining of pain and numbness to both his legs and in his lower back.[4]  Medical records show that health care staff have prescribed the aforementioned NSAIDs, along with Elavil, Disalicid, Ultram, Neurotin, Tylenol, muscle rub, and courses of prednisone in an attempt manage his pain. In addition, he received gel insoles for his shoes.

---

[3]  Dr. Malik claims that on September 12, 2006, he received the medical records from Dr. Winslow and reviewed them.

[4]  On June 21, 2006, Plaintiff was referred to a psychologist for evaluation because of the excessive number of sick-call forms he had submitted.  Defendant notes that at that time Plaintiff was already being treated for depression and schizoaffective disorder.

Medical staff referred Plaintiff for a series of lumbar spine x-rays and a CAT scan in April of 2006.  According to Dr. Malik, the results showed that Plaintiff suffers from: (1) a disc space narrowing from the third lumbar vertebra to the first sacral vertebra, most likely due to disc disease; and (2) slippage or listhesis of the fourth lumbar vertebra relative to the fifth lumbar vertebra, which could account for the mild degenerative narrowing of the disc spaces throughout the lumbar spine.  The CAT scan showed that there was no spinal stenosis at any level to account for the severity of Plaintiff's complaints.

On August 30, 2006, Defendant referred Plaintiff to the physical therapy department for treatment.  Plaintiff received physical therapy from September 28 to October 24, 2006.  On October 30, 2006, a neurology consult was ordered by Dr. Aldana, who had evaluated Plaintiff and prescribed Ultram for pain and Neurotin, a medication used to treat tingling and pain associated with nerve disorders or damage.

On November 9, 2006, Plaintiff was seen by Defendant for his complaints of "enormous" pain in his lower back and around his navel and numbness of his feet and groin upon walking.  Defendant maintains that he noticed that Plaintiff was walking with a normal gait without any distress when he arrived in the medical area, but limped and appeared in distress when he came in for examination.  Defendant noted a superficial loss of touch to the dorsal surface of both feet, but otherwise found good sensation.  Plaintiff was advised that nerve conduction studies were recommended before he could be sent out for a neurology consult.  Defendant assured Plaintiff that once the studies were scheduled, Defendant would follow up on the results and call Plaintiff to review them with him.

Plaintiff was evaluated by Dr. Aldana on November 22, 2006, for similar complaints of pain.  An issue concerning Plaintiff's failure to receive a refill blister pack of his Ultram on or about

November 19, 2006, was discussed and attempts were made to resolve the problem. On December 2, 2006, Plaintiff was transferred from MCI-H to the Brockbridge Correctional Facility. He has since been transferred to MTC.

    2. Legal Analysis

Defendant moves the Court to dismiss the complaint or, in the alternative, to grant summary judgment, arguing that: (1) Plaintiff has failed to allege sufficient facts to state a cause of action against Defendant; (2) Plaintiff's Eighth Amendment contentions are otherwise without merit; and (3) Plaintiff's transfer out of the MCI-H moots his request for injunctive relief against Defendant. Because Plaintiff has failed to come forward with opposing material to establish a claim of Eighth Amendment deliberate indifference against Dr. Malik, the Court need not decide the case on the other arguments.

A prisoner presenting a denial of medical care claim in violation of the Eighth Amendment must prove two essential elements. First, he must satisfy the "objective" component by illustrating a serious medical condition. See Hudson v. McMillian, 503 U.S. 1, 9 (1992); Estelle v. Gamble, 429 U.S. 97, 105 (1976); Shakka v. Smith, 71 F.3d 162, 166 (4th Cir. 1995); Johnson v. Quinones, 145 F.3d 164, 167 (4th Cir. 1998). If this first element is satisfied, the prisoner must then prove the subjective component of the Eighth Amendment standard by showing deliberate indifference on the part of prison officials or health care personnel. See Wilson v. Seiter, 501 U.S. 294, 303 (1991) (holding that claims alleging inadequate medical care are subject to the "deliberate indifference" standard outlined in Estelle, 429 U.S. at 105-06). "[D]eliberate indifference entails something more than mere negligence [but] is satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." Farmer v. Brennan, 511 U.S. 825, 835 (1994). Medical personnel "must both be aware of facts from which the inference could be drawn

that a substantial risk of serious harm exists, and [they] must also draw the inference." Id. at 837. Healthcare staff are not, however, liable if they "knew the underlying facts but believed (albeit unsoundly) that the risk to which the facts gave rise was insubstantial or nonexistent." Id. at 844; see also Johnson v. Quinones, 145 F.3d at 167.

Assuming that Plaintiff has satisfied the first element by demonstrating a serious medical condition, the undersigned concludes that Plaintiff has failed to prove the second element by showing that the treatment received for his conditions was so inadequate as to meet the deliberate indifference standard announced in Estelle. Plaintiff suffered trauma to his ankle in 2001 due to a work-related injury and had surgery in 2002 to relieve any nerve compression. Since his recent admission to the DOC in 2006, he has filed a voluminous number of sick-call requests concerning back and leg pain, numbness, and tingling. Plaintiff has been evaluated by prison nurses, physician's assistants, and doctors. In an attempt to discover an underlying objective cause for his complaints, he underwent a series of lumbar x-rays and a CAT scan was performed. Further, Plaintiff was prescribed physical therapy and is scheduled to receive nerve conduction studies while confined in the DOC.[5] Health care personnel have attempted to manage Plaintiff's pain with NSAIDS, steroids, and other neurological pain reducers. While test and empirical data has failed to provide any objective reasons for his continuing claims of pain, numbness, and tingling, Plaintiff continues to be provided medications in light of his pre-incarceration forklift accident and surgery and his subjective complaints.

---

[5] In recent correspondence to the Court, Plaintiff claims that: (1) he has been seen by several physician's assistants at MTC; (2) he was referred to see a neurologist by the MTC physician; (3) he was recently sent to a specialist at University of Maryland Hospital, where he received a "battery" of tests and cultures; and (4) he has been diagnosed with an infection in the lower lumbar area. (Paper Nos. 18 & 19). Plaintiff states that he is now receiving antibiotic treatment. (Paper No. 19). He claims that the illness could have been treated months earlier if Dr. Malik "would have taken my illness and injury in a better professional matter...." (Id.).

Plaintiff's complaint comes down to a disagreement with Defendant's decisions regarding the course of evaluation and treatment. He wants to see medical personnel outside the prison setting.[6] This Court knows of no free-standing right for a prisoner to receive care from a physician of his own choosing.

IV.   CONCLUSION

For the aforementioned reasons, Defendant's Motion for Summary Judgment is hereby granted. Judgment is entered in favor of Defendant and against Plaintiff. A separate Order follows.

Date: 2/21/07                                        /s/
                                              ROGER W. TITUS
                                       UNITED STATES DISTRICT JUDGE

---

[6] It appears that Plaintiff has received the relief he seeks by seeing a specialist at the University of Maryland Hospital Center. To the extent that he claims that Dr. Malik did not act professionally and failed to diagnose his condition at an earlier date, he has, at best, stated a claim of malpractice. Mere malpractice or negligence does not, however, violate the Eighth Amendment. See Estelle, 429 U.S. at 106; Miltier v. Beorn, 896 F.2d 848, 852 (4th Cir. 1990).